[No. 1339-1.    Division One—Panel 2.    June 26, 1972.]

THE STATE OF WASHINGTON, *Respondent,* v. DENNIS
WILLIAMS, *Appellant.*

*James E. Anderson,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *James J. Lamont, Deputy,* for respondent.

FARRIS, A.C.J.—Mr. Williams appeals from a conviction, following a jury trial, of the crime of living with and accepting the earnings of a common prostitute. There was substantial evidence to sustain the conviction. Mr. Williams assigns error to (1) the failure of the trial court to suppress all testimony regarding the prosecuting witness' alleged property which was in his apartment including the testimony of a police officer as to the conversation between Mr. Williams and the prosecuting witness and their conduct at

the time she claimed the property; and (2) the failure of the trial court to grant a motion for mistrial based upon a statement made by the court to counsel which, in the opinion of Mr. Williams, amounted to a rebuke reflecting upon the integrity of his counsel.

The prosecuting witness testified that she was a common prostitute, that she lived with Mr. Williams, and that she regularly gave him 80 per cent of her earnings, which she estimated as from $150 to $200 per night. Two other witnesses, one of whom was a sister of the prosecuting witness, testified that Mr. Williams and the prosecuting witness lived together and that the prosecuting witness gave money to Mr. Williams. Mr. Williams gave a different version of the matter which the jury apparently rejected.

It is not disputed that some personal property of the prosecuting witness was in Mr. Williams' apartment. He delivered certain items to her when she came with a police escort to claim them on May 11, 1971. Subsequently, on May 17, 1971, several police officers and the prosecuting witness returned to Mr. Williams' apartment. He was placed under arrest and advised of his constitutional rights in accordance with *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). In the presence of the officers, the witness went about the apartment gathering items that she claimed belonged to her. Mr. Williams objected to the removal of certain of the items and remained silent when other items were claimed. Mr. Williams argues that the effect of introducing evidence of this activity was that the jury could infer that those items which he failed to make any statements about belonged to the prosecuting witness. He concludes that the obvious effect of such inference was the corroboration of her testimony that she had moved in with her belongings and lived with him. He argues that he was placed in a position that forced him to speak to prevent his apartment from being stripped, that his statements were not voluntary, and that his silence was used against him. He relies upon *State v. Redwine,* 23 Wn.2d 467, 161 P.2d 205 (1945), which holds

that the failure of an accused person to deny, contradict or object when an incriminating statement is made in his presence is not admissible if it occurs after arrest. He recognizes that the statements and silence here were not in direct response to interrogatories or incriminating statements, but he argues that the same rule should apply. We do not agree.

Mr. Williams testified that the prosecuting witness was his fiancee, that she left certain of her belongings at his residence when she went to Hawaii, that he broke the engagement when he learned that she was a prostitute, and that she was making false statements to "get even" with him for the rejection. Her ownership of items that were in his apartment is not necessarily inconsistent with his version of the facts, but that is not the question. The issue is whether a police officer can testify to observations made by him of the conduct of an accused following arrest, and whether conversations between the accused and a witness at the trial which were overheard by the police can be introduced into evidence. Each case must turn upon its particular facts. Under the facts in issue, the trial court properly ruled that the comments of Mr. Williams made in the presence of police officers on May 17, 1971, were volunteered statements, freely and knowingly made, and were not in response to any interrogation.

Mr. Williams also argues that the actions taken by the police on May 11 and May 17 constituted a search which was not incidental to an arrest. *See Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). The record reflects that on May 11 the police officers did not enter the apartment but merely picked up certain items that Mr. Williams had boxed and placed outside for that purpose. Whether the activities of May 17 amounted to an unreasonable search and seizure and were therefore prohibited by the Fourth Amendment depends upon all of the facts and circumstances. Although the police served Mr. Williams with an arrest warrant and took him into custody, the record supports the trial court's ruling that no search or

seizure was involved. The police merely stood by while the prosecuting witness reclaimed the items which she said belonged to her. It is not disputed that the prosecuting witness was not allowed to take any items which Mr. Williams contended belonged to him. Nor is it disputed that Mr.. Williams consented to the removal of certain items which the prosecuting witness claimed as hers. The record supports the trial court's holding that the acts of the prosecuting witness in picking up property which she claimed to own, and Mr. Williams' asserting his right to the items which he contended were his was not a search and seizure.

Further, there was no motion in advance of the trial to suppress the testimony that is objected to here. *See State v. Duckett*, 73 Wn.2d 692, 440 P.2d 485 (1968) and *State v. McCormack*, 3 Wn. App. 997, 478 P.2d 756 (1970).

■ The final assignment of error arises from the following exchange during cross-examination of the sister of the prosecuting witness:

Q  Did you stay, spend, stay overnight at any other place when you were in Seattle other than at Mr. Williams' apartment?

MR. LAMONT: Objection.

THE COURT: Sustained.

MR. ANDERSON [counsel for Mr. Williams]: Your Honor, I would like to approach the bench on this if I could.

THE COURT: It is not necessary. We had a conference in chambers and I don't want counsel violating the instruction I gave. The objection is sustained.

. . .

MR. ANDERSON: Your Honor, I would like to put that on the record.

THE COURT: It is on the record right now and if you want to put more on the record you can do it at the recess.

MR. ANDERSON: Very fine, Your Honor.

At the beginning of the trial, the court granted a motion in limine restricting the defense from revealing the fact that the witness was in Seattle to obtain an abortion. She had testified on direct examination that she had stayed with the

prosecuting witness and Mr. Williams for 3 weeks and that she had seen her sister give him money. Counsel's reasons for inquiring into other places that she had stayed while in Seattle are not a part of the record, but Mr. Williams argues that the failure of the trial court to grant a mistrial following the reported exchange left the jury with the inference that counsel was trying to do something "underhanded and devious". He relies upon the decision in *State v. Whalon*, 1 Wn. App. 785, 464 P.2d 730 (1970). *Whalon* is clearly distinguishable on its facts. Here the trial court merely sustained the objection without comment. The reason for the objection was not stated because it should have been clear to counsel. His subsequent inquiry was acted upon by the court as if it was a request for a reason for its ruling. While the court might have given the reason in a conference at the bench, this was not required. There was no prejudice to the defendant. *See State v. Gitchel*, 5 Wn. App. 72, 75, 486 P.2d 325 (1971).

Affirmed.

SWANSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied August 11, 1972.